PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CIEARA MUNOZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PAULA'S CHOICE, LLC, a Washington limited liability company,<br><br>Defendant. | Case No.   2:23-cv-3426<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE VIDEO PROTECTION PRIVACY ACT** |

# I. INTRODUCTION

Whenever someone watches a video on www.paulaschoice.com (the "Website"), the authoritarian government of the Peoples Republic of China can find out. Why? Because (1) Defendant reports the "viewing event" to TikTok, which is owned by ByteDance; (2) ByteDance is controlled by the People's Republic of China ("PRC"); and (3) ByteDance *admits* that it has used TikTok to spy on Americans at the direction of the PRC.

As shown below, Defendant's actions violate the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). As such, Defendant is liable to each class member for $2,500.

## II. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the VPPA, a federal law.

2. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the acts and events giving rise to the class claims occurred in this District. Plaintiff and many Class members reside in this District.

3. Defendant is subject to jurisdiction under California's "long-arm" personal jurisdiction statute because the exercise of jurisdiction over Defendant is not "inconsistent with the Constitution of this state or the United States." Indeed, Plaintiff believes that Defendant generates a minimum of eight percent of its national sales to Californians and that the website operates as a "gateway" for many such sales, such that the website "is the equivalent of a physical store in California." Since this case involves illegal conduct emanating from Defendant's operation of its website targeting Californians, California courts can "properly exercise personal jurisdiction" over the Defendant in accordance with the Court of Appeal opinion in *Thurston v. Fairfield Collectibles of Georgia*, 53 Cal.App.5th 1231 (2020).

## III.   PARTIES

4. Plaintiff is a resident of California who resides in this District. Plaintiff is also a consumer advocate who played and watched a video titled ***"Sustainability"*** in the

Spring of 2023 on Defendant's Website at the link https://www.paulaschoice.com/sustainability.

5. Defendant is a Washington entity that sells skin care and lifestyle products. Defendant owns, operates, and/or controls the Website and offers videos to watch through the Website. The Website is widely available throughout the United States and in this District.

## IV. FACTUAL ALLEGATIONS

### A. TIKTOK, BYTEDANCE, THE PRC AND THE CCP.

6. TikTok describes itself as "the leading destination for short-form mobile video." See https://www.tiktok.com/about?lang=en (last downloaded April 2023). In everyday non-technical language, this means that Tiktok is a popular social media application that allows users to create, watch, and share 15-second videos created on mobile devices.

7. TikTok has over 150 million American users and is owned by Chinese technology firm, ByteDance Ltd., which appoints Tiktok's executives. See https://abcnews.go.com/Business/wireStory/us-chinese-owned-tiktok-security-threat-98098015 (last downloaded April 2023).

8. The PRC is a Marxist one-party authoritarian political system ruled by the Chinese Communist Party, or "CCP."[1] The "Chinese government is essentially the shadow of the Communist Party, moving as the party does, and consequently government roles matter far less than party ones."[2] According to scholar Rush Doshi, the CCP "sits above the state, runs parallel to the state, and is enmeshed in every level of the state."[3]

9. The PRC owns a stake in ByteDance, appoints a portion of ByteDance's board, and has substantial operational control over ByteDance. See

---

[1] See Wang, Peijie (2017), "State Structure and Organs of State Power of China's Governance."
[2] See James, Palmer "China Gets a New Premier", Foreign Policy Magazine (last accessed April 2023).
[3] See Doshi, Rush "The Long Game: China's Grand Strategy to Displace American Order" (2021).

https://www.reuters.com/technology/bytedance-says-china-unit-holds-local-licences-response-media-report-2021-08-16/ (last downloaded April 2023).

10. To summarize: (1) the CCP controls the PRC; (2) the PRC owns a stake in and controls ByteDance; and (3) ByteDance owns and controls TikTok.

11. The PRC 2017 National Intelligence Law states that "any organization" must assist or cooperate with PRC and CCP state intelligence work, while a separate 2014 Counter-Espionage Law mandates that such organizations must collect evidence for any PRC or CCP investigation upon demand.[4]

12. ByteDance admits that, acting under orders from the PRC and CCP based on the 2017 National Intelligence Law, ByteDance employees in China accessed the private data of U.S. TikTok users, for which is it now being investigated by the United States Department of Justice.[5]

13. Due to concerns about Tiktok reporting private citizen activities to the CCP and PRC, the United States government and several other countries are in the process of banning TikTok's use.[6] This is because, in statecraft parlance, the United States government regards TikTok as a "trojan horse" that enables a foreign adversary to spy on unsuspecting American citizens.[7]

**B. THE TIKTOK PIXEL**

14. According to TikTok, "The TikTok Pixel is a piece of code that you can place on your website that allows advertisers to share website visitor events with TikTok via browser."[8]

---

[4] See https://www.lawfareblog.com/beijings-new-national-intelligence-law-defense-offense (last downloaded April 2023).
[5] See https://www.npr.org/2023/03/21/1165210054/tiktok-ceo-to-lawmakers-americans-data-not-at-risk (last downloaded April 2023).
[6] See https://www.nytimes.com/article/tiktok-ban.html#, *Why Countries Are Trying to Ban TikTok* ("Governments have expressed concerns that TikTok, which is owned by the Chinese company ByteDance, may endanger sensitive user data.") (last downloaded April 2023)
[7] See https://www.nytimes.com/2022/12/20/magazine/tiktok-us-china-diplomacy.html (referencing quoted language) (last downloaded April 2023).
[8] See https://ads.tiktok.com/help/article/tiktok-pixel (last downloaded April 2023).

15. The Tiktok pixel also tracks and reports to Tiktok additional metadata such as Ad/Event information (information about the ad a TikTok user has clicked), Timestamp (the time that the page was viewed), the user's IP Address, and the user's device make, model, operating system, and browser information.[9] All of this information constitutes Personally Identifiable Information, or "PII."

16. Website owners control what data the Tiktok Pixel collects and reports back to Tiktok by using Tiktok Events Manager to choose what "Events" to track and report to Tiktok."[10] According to TikTok, "*Events are defined as actions a website visitor takes to achieve a business goal, like adding an item to a cart, filling out a form, or making a purchase. Events help you build marketing audiences, optimize ad delivery, and measure campaign performance.*"[11]

17. Defendant has elected to track and report "Page View" events to Tiktok, meaning that every time someone views on a page on Defendant's website, Defendant reports the "event" to Tiktok.

18. Why did Defendant install Tiktok Pixel and why does Defendant knowingly report "Page View Events" to Tiktok? As one industry insider reports, its all about the money: "*To take your advertising on TikTok to the next level you need to install the TikTok Pixel on your website. This HTML code allows you to track actions people take on your website or app after they click on your ad. Additionally, you can retarget them on TikTok in the future.*"[12]

**C. THE WEBSITE AND TIKTOK PIXEL**

19. Plaintiff has a TikTok account. As noted above, Plaintiff watched a video on the website entitled *"Sustainability."*

---

[9] *Id.* (last downloaded April 2023).
[10] *Id.* ("TikTok Events Manager is a workspace to manage website pixels and events, and quickly access event data... You can select from a list of standard events that best align with your business goal and define how they are tracked.") (last downloaded April 2023).
[11] *See* https://ads.tiktok.com/help/article/standard-events-parameters?lang=en (last downloaded April 2023).
[12] *See* https://patchboard.co/blog/post/tiktok-pixel# (last downloaded April 2023).

20. Defendant has configured video on the webpage https://www.paulaschoice.com/sustainability to play upon viewing the page, which triggers the submission of user data to TikTok.

**Figure 1**

| Name | Value | Domain |
|---|---|---|
| _ttp | g9HsebxROiC_AEEJzX0UWd… | .paulaschoice.com |
| _ttp | 2Pl1ukZ5M0egINKstPzZiVDw… | .tiktok.com |

21. The below screenshots shows that Defendant has elected to transmit the "Page View" event to TikTok every time someone clicks on the page https://www.paulaschoice.com/sustainability. As noted above, everytime someone clicks on that page, they automatically watch the *"Sustainability"* video, and Defendant reports it to TikTok:

**Figure 2**



22. Through the preceding acts, Defendant notifies Tiktok every time someone watches a video on the Website along with the title of the video watched. In other words, the Defendant discloses to a third-party information identifying a person as having

requested or obtained specific video materials or services from Defendant – exactly what VPPA prohibits.

### D. Experience of Plaintiff

23. Plaintiff has purchased products from Defendant in the past. As such, Plaintiff is a "purchaser" and therefore a "consumer" under the VPPA.

24. Plaintiff is also a consumer privacy advocate with dual motivations for playing videos on Defendant' Website. First, Plaintiff is genuinely interested in learning more about the goods and services offered by Defendant. Second, Plaintiff is a "tester" who ensures that companies abide by the privacy obligations imposed by federal law.

25. As a consumer who advances important public interests at the risk of vile personal attacks, Plaintiff should be "praised rather than vilified." *See Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006). Indeed, the Ninth Circuit recently made exceptionally clear that it is "necessary and desirable for committed individuals to bring serial litigation" to enforce and advance consumer protection statutes, as Plaintiff does here. *Langer v. Kiser*, 57 F.4th 1085, 1095 (9th Cir. 2023).

26. In enacting the VPAA, Congress intentionally chose to extend its protections to all persons who watch videos, not simply those who purchase them or claim pecuniary loss. As such, statutes like the VPPA are largely enforced by civic-minded "testers" such as Plaintiff. *See Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109 (9th Cir. 2014) (explaining why testers have Article III standing and generally discussing value and importance of testers in enforcement of consumer protection and civil rights statutes).

27. When Plaintiff played the video on the Website, Defendant knowingly disclosed the video's title to Tiktok. Defendant also disclosed identifiers and PII for Plaintiff.

28. **Defendant knowingly does <u>precisely</u> what VPPA prohibits: specifically, it discloses to third parties the personally identifiable information (PII) of consumers derived from their video viewing habits, and it does so secretly and**

**without users' knowledge or consent. Defendant's conduct is illegal, offensive, and contrary to visitor expectations.**

## V. CLASS ALLEGATIONS

29. Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

> **All persons in the United States who played video content on any website owned, operated or controlled by Defendant and whose PII was disclosed by Defendant to any third party during the two years preceding the filing of this action (the "Class Period").**

30. **Numerosity (Fed. R. Civ. P. 23(a)(1)):** At this time, Plaintiff does not know the exact number of members of the aforementioned Class. However, given the popularity of Defendant's website, the number of persons within the Class is believed to be so numerous that joinder of all members is impractical.

31. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3)):** There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual members of the Class include:

   a) whether Plaintiff and the Class are "consumers" under VPPA;

   b) whether Defendant collected Plaintiff's and the Class's PII;

   c) whether Defendant unlawfully disclosed PII in violation of VPPA; and

   d) whether Defendant's disclosures were committed knowingly.

32. **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, used the Website to play videos, and had PII collected and disclosed by Defendant.

33. **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiff has retained qualified and competent counsel who are highly experienced in complex consumer class action litigation. Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of the Class.

34. **Superiority (Fed. R. Civ. P. 23(b)(3)):** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Even if every member of the Class could afford to pursue individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action.

## VI.     CAUSE OF ACTION
## VIOLATION OF THE VIDEO PRIVACY PROTECTION ACT
## 18 U.S.C. § 2710, *et seq.*

35.     Defendant is a "video tape service provider" that creates, hosts, and delivers videos on the Website, thereby "engag[ing] in the business, in or affecting interstate or foreign commerce, of rental, sale, ***or delivery of prerecorded video*** cassette tapes or similar ***audio visual materials***." 18 U.S.C. § 2710(a)(4) (emphasis added).

36.     Hosting video content is a key part of Defendant's business model, as it uses the videos as a "trojan horse" to collect and disclose viewers' PII so it can later retarget them for advertisements.

37.     Plaintiff and members of the Class are "consumers" as set forth above under 18 U.S.C. § 2710(a)(1).

38.     Plaintiff and the Class members played videos on Defendant's Website, and Defendant then disclosed to Tiktok the titles viewed, along with additional PII of each viewer.

39. Defendant knowingly disclosed Plaintiff's and Class members' PII because it used that data to build audiences on Tiktok and retarget them for its advertising campaigns.

40. Plaintiff and Class members did not provide Defendant with any form of consent—written or otherwise—to disclose their PII to third parties.

41. Defendant's disclosures were not made in the "ordinary course of business" as the term is defined by the VPPA because they were not necessary for "debt collection activities, order fulfillment, request processing, [or] transfer of ownership." 18 U.S.C. § 2710(a)(2). Rather, it was done for targeted marketing purposes.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against Defendant, individually and on behalf of all others similarly situated, as follows:

a. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Class;

b. For an order declaring that Defendant's conduct violates the VPPA;

c. For an order finding in favor of Plaintiff and the Class on the cause of action asserted herein, including all available damages;

d. For prejudgment interest on all amounts awarded;

e. For injunctive relief to stop the illegal conduct;

f. For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses and costs of suit;

g. For any and all other relief, at law or equity, that may be appropriate.

Dated:  May 5, 2023                    PACIFIC TRIAL ATTORNEYS, APC

By: _____
Scott. J. Ferrell
Attorneys for Plaintiff